FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 27, 2018

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HEATHER C-S.,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>Defendant. | No. 4:17-CV-05100-RHW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12, 13. Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C §§ 401-434. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 1

## I. Jurisdiction

Plaintiff filed her application for disability insurance benefits on July 15, 2013. AR 147-53. Her alleged onset date is December 22, 2010. AR 147. Her application was initially denied on November 18, 2013, AR 96-98, and on reconsideration on February 26, 2014, AR 100-01.

Administrative Law Judge ("ALJ") M.J. Adams held a hearing on November 3, 2015. AR 37-72. ALJ Adams issued a decision on November 27, 2015, finding Plaintiff ineligible for disability benefits. AR 23-32. The Appeals Council denied Plaintiff's request for review on May 19, 2017, AR 1-3, making the ALJ's ruling the "final decision" of the Commissioner.

Plaintiff timely filed the present action challenging the denial of benefits on July 18, 2017. ECF No. 3. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the

claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational

interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and accordingly are only briefly summarized here. Plaintiff was 24 years old at her alleged onset date. AR 31, 162. She previously worked as a caregiver, cashier, nursing assistant, and cosmetologist. AR 164. She significantly injured her right arm at work in late 2010. AR 40.

## V. The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act from December 22, 2010, through the date of the decision. AR 23-32.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 22, 2010, her alleged onset date (citing 20 C.F.R. §§ 404.1571 *et seq*.). AR 25.

**At step two**, the ALJ found Plaintiff had the following medically determinable impairments: complex regional pain syndrome (also known as reflex sympathetic dystrophy) of the right (dominant) upper extremity, ulnar neuropathy of the left upper extremity, and asthma (citing 20 C.F.R. §§ 404.1520(c)). AR 25.

**At step three,** the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 25-26.

**At step four,** the ALJ found Plaintiff had the following residual functional capacity: she can perform light work as defined in 20 C.F.R. § 404.1567(b) except she cannot push or pull with her right upper extremity; she cannot climb ladders, ropes, or scaffolding; she can occasionally crawl and can frequently climb ramps and stairs; she should avoid concentrated exposure to vibration, pulmonary irritants, extreme temperatures, and hazards. AR 26.

The ALJ also determined that Plaintiff could not perform her past relevant work as a nurse assistant. AR 31.

**At step five,** the ALJ also found that in light of her age, education, work experience, and residual functional capacity, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform. AR 31-32. These include restaurant host, companion, and children's attendant. *Id.* The ALJ consulted a vocational expert and the Dictionary of Occupational Titles in making this determination. *Id.*

## VI. Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) improperly rejecting the opinions of Plaintiff's medical providers; (2) rejecting the subjective complaints of Plaintiff and lay witness statements; (3) failing to meet the burden at step five to identify specific jobs available in significant numbers that Plaintiff could perform in light of her specific functional limitations. ECF No. 12 at 6.

## VII. Discussion

**A. The ALJ did not err in evaluation of the opinions of Tracey Glenn, ANRP.**

Nurse Glenn treated Plaintiff between February 2013 and August 2014. She stated that Plaintiff was unable to use her right arm or hand at all, but she may be capable of sedentary work using her left hand, and that Plaintiff could list five pounds with her left arm. AR 700, 719-20. Nurse Glenn also approved Plaintiff for a job analysis to be a biller coder. AR 720. The ALJ gave some weight to these

opinions, agreeing that Plaintiff would be unable to use her right arm and the limitations stemming from that (i.e. ladders), but ultimately determined that the record did not support limitations that would limit Plaintiff to sedentary work. AR 30.

The opinions of Nurse Glenn are classified as "other source" opinions. "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

The ALJ cited to Plaintiff's daily activities, which included independence in cooking, cleaning, and shopping with only the use of her left arm. AR 30, 737. Activities of daily living that are inconsistent with opined limitations provide a germane reason to discount other source testimony. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

The ALJ also noted routine findings in strength, sensation, and range of motion in Plaintiff's left arm, and references to pain and limitations generally confined to the right arm and hand. AR 30, 252-55, 316, 327, 724, 731. Inconsistency with evidence in the medical record is a germane reason to reject other source testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ provided valid, germane reasons for the weight given to Nurse Glenn's opinion.

**B. The ALJ did not err in assessing Plaintiff's subjective complaints.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and

other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleges; however, the ALJ determined that her statements regarding intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 18-19.

The ALJ found that Plaintiff's statements about her inability to use her right arm are consistent with the record, but her daily activities, examination findings, and other medical evidence do not support significant limitations in her left arm. AR 27. Plaintiff does not challenge the findings that she is unable to use her right arm.

Plaintiff alleges pain and numbness in her left arm and hand, but the record overall supports the ALJ's conclusion. Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Findings of normal range of motion, strength, and sensation in Plaintiff's left arm and hand are present in numerous places across the record. *See, e.g.,* AR 272, 316, 327, 438, 731.

Nerve conduction studies in June 2013 did find moderate ulnar neuropathy at the left elbow, which Plaintiff asserts supports her subjective complaints and demonstrates reversible error. AR 466, 655. In the decision, the ALJ focused the analysis on the normal electromyography ("EMG") findings and did not specifically address the abnormal findings in the nerve conduction study. AR 27, 30. The ALJ did include ulnar neuropathy of the left arm as a severe impairment, but the record demonstrates that across the relevant time period examination findings showed normal strength, range of motion, and sensation in Plaintiff's left arm. *See, e.g.,* AR 272, 316, 327, 438, 731. Specifically, an ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-603 (9th Cir. 1999).

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Here, the ALJ gave stronger weight to the consistent findings. The Court will not second-guess that rationale.

The ALJ also found that Plaintiff's course of treatment is inconsistent with her testimony. AR 27-28. In particular, the ALJ focused on the long periods without narcotic pain relief that the ALJ found to contradict the testimony that Plaintiff had frequent absences and withdrawals from her college courses due to her impairment. AR 28. A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's [] testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff argues that she stopped taking medication because they were not helping her pain and cites to notations of uncontrolled pain in the record. ECF No. 12 at 13. However, while Dr. Nemri did state that Plaintiff's medications were not relieving her pain, he did not encourage Plaintiff to cease treatment, but instead consistently changed her prescriptions or increased dosages. AR 432-34. While she was advised to wean off methadone due to pulmonology concerns, the record shows she was able to tolerate oxycodone, a different narcotic. AR 757.

Finally, Plaintiff's daily activities are inconsistent with her allegations, as the ALJ detailed. AR 28. While Plaintiff was right-arm dominant, the record demonstrates that she learned to adapt her activities to use her left hand. *See, e.g.*,

AR 736. She is independent in her household chores, including cooking, cleaning, shopping, and caring for her children, as well as in the majority of her personal care. AR 737, 815. She is also able to drive. AR 737. She also has reported being able to garden and hike. AR 315, 369. An ALJ may consider activities of daily living among the factors in assessing credibility. *Smolen*, 80 F.3d at 1284.

In sum, the ALJ provided multiple reasons that are substantially supported by the record to explain the adverse credibility finding. The Court finds no error.

**C. The ALJ did not err in the treatment of the lay witness testimony from Lora Allen.**

As with the opinion of Nurse Glenn, lay witness testimony from Ms. Allen is considered "other source" testimony, and the ALJ is obligated to give germane reasons to discount the testimony. *Dodrill*, 12 F.3d at 915; *see also supra* at p. 9. Ms. Allen is the disability services coordinator for Big Bend Community College, where Plaintiff attends classes. AR 246-47. The ALJ gave some weight to Ms. Allen's statement. AR 29. In particular, the ALJ found that Ms. Allen's statement that Plaintiff needed assistance writing and additional time for testing was consistent with Plaintiff's total inability to use her right arm and hand. *Id.* However, the ALJ did not credit the statement that Plaintiff was unable to persist with her classes or maintain regular attendance due to her impairment and provided multiple germane reasons for doing so. *Id.*

Again, inconsistency with evidence in the medical record is a germane reason to reject other source testimony, *Bayliss*, 427 F.3d at 1218, and here the ALJ pointed to multiple inconsistencies in her decision, AR 29. First, the records from spring 2011 do not reference Plaintiff experiencing side effects of her medication or deficits in cognitive function. AR 29, 248, 258, 260-61. Yet, Ms. Allen stated in her letter that Plaintiff withdrew from classes because "she was having symptoms from the medication she was on from the injury that impaired her ability to process the material she was learning in class." AR 246. However, Plaintiff was able to complete classes in fall 2014 and spring 2015 while taking oxycodone, and without narcotics, Plaintiff was able to complete classes in winter 2013. AR 246, 431, 730, 757, 766.

Again, because Plaintiff may interpret the record differently does not make the ALJ's interpretation improper. *See Molina*, 674 F. 3d at 1111. The ALJ's analysis is supported by the record and contains legally sufficient germane reasons for the weight given to Ms. Allen's lay witness statement.

**D. The ALJ did not err at step five.**

The ALJ based the findings at step five on the testimony of a vocational expert. AR 31-32. Plaintiff argues that the vocational expert's opinion was unreliable because it was based on an incomplete hypothetical that failed to include some limitations opined by Dr. Monlux and Nurse Green.

The ALJ gave significant weight to Dr. Monlux's opinions, and Plaintiff did not challenge this at step four. AR 30, ECF No. 12. Dr. Monlux was the treating physician for Plaintiff's workers compensation claim. AR 472-503. He evaluated Plaintiff's ability to work related to her workplace injury, and he determined her right arm and hand were unusable. *Id.* As stated throughout, the ALJ found the assessment that Plaintiff was unable to use her right arm and hand consistent with the record, and for that reason the ALJ gave Dr. Monlux's opinion significant weight. AR 30-31. The significant limitations opined by Dr. Monlux were specifically about her right hand and arm. AR 472, 475, 487, 494, 498. While Dr. Monlux expressed concern about Plaintiff's continued attempts at light work, AR 495, Dr. Monlux also admits that he needed further information, including a nerve conduction study and EMG, to fully explain possible limitations with Plaintiff's left hand, AR 502. Moreover, evidence in the record, including the previously discussed daily activities and Plaintiff's successful semesters in college, contradict this finding.

The Court has already upheld the ALJ's findings regarding Nurse Green. *See supra* at p. 8-10. Plaintiff's step five argument is nothing more than an attempt to reargue that the ALJ should have given greater weight to Nurse Green and calculated the residual functional capacity differently to account for this, and the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 16

Court will uphold the ALJs findings. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Finally, Plaintiff asserts the ALJ failed at step five by failing to identify jobs available in significant numbers as they are normally performed. ECF No. 12 18-19. The vocational expert testified that based on Plaintiff's residual functional capacity, including the restrictions on her right arm, in the categories provided there were approximately 22,000 positions nationally, with approximately 550 in Washington state. AR 65-67. The ALJ accepted this testimony.

Plaintiff relies on the 550 number in Washington, rather than the larger national number—22,000—to make her argument. ECF No. 12 at 19. Naturally, the number in a state will be smaller than the national count. Moreover, the court will uphold the ALJ's decision if it finds either the national or regional number to be "significant." *Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012). The Ninth Circuit has never established a bright-line rule for "significant" numbers. In *Beltran*, the court found 1,680 to be a significant number, but when it reviewed the testimony of the vocational expert, it determined the regional amount was extremely small. *Id.* In *Guiterrez v. Comm'r of Soc. Sec.*, the court found 25,000 jobs nationally and 2,500 regional jobs to be significant. 740 F.3d 519 (9th Cir. 2014). Upon review of existing case law, the Court finds both 22,000 nationally and 550 regionally to be significant and upholds the ALJ's step five determination.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 13,** is **GRANTED.**

3. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 27th day of June, 2018.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge